UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

MARIA COSTELLO,

          **Plaintiff,**

      **- against -**

NEW YORK STATE NURSES
ASSOCIATION, RICHARD DRUCKER,
AND SUSANNE CALVELLO,

       **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 3245 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/25/11__

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      Marie Costello brings suit against her former employer, the New York

State Nurses Association ("NYSNA"), and her former supervisors, Richard

Drucker and Susanne Calvello, in their individual capacities (collectively,

"Defendants").  Costello alleges that defendants engaged in employment

discrimination on the basis of her age, gender, race, and national origin; created a

hostile work environment; and retaliated against her, in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"),[1] the New York State Human Rights Law

---

[1]     42 U.S.C. § 2000e, *et seq.*

("NYSHRL"),[2] and the New York City Human Rights Law ("NYCHRL").[3]

Costello also alleges that Drucker and Calvello aided, abetted, compelled, and/or

incited the alleged discrimination in violation of the NYSHRL and the NYCHRL.[4]

      Defendants move for summary judgment on the following grounds:

(1) Costello cannot establish a prima facie case of discrimination or retaliation

because she has not suffered an adverse employment action; (2) Costello cannot

establish pretext; (3) Costello cannot establish a prima facie case of hostile work

---

[2]     Executive Law, § 290, *et seq.*

[3]     N.Y.C. Admin. Code § 8-101, *et seq.* Although she alleges age discrimination, Costello fails to plead a cause of action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Instead, Costello includes a blanket claim that she has been subjected to discrimination under "all applicable federal, state, and local provisions that can reasonably be inferred from the facts set forth." Complaint ("Compl.") ¶ 54. While an attempt to include any omitted causes of action in this manner may be appropriate in a pro se complaint, it is not acceptable when the complaint has been drafted by an attorney. Costello first mentions the ADEA in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, which is too late for the Court's consideration. *See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."). Because she failed to mention the ADEA in her Complaint, and has made no effort to amend her Complaint despite having the benefit of counsel, the Court will not consider her age discrimination claim under federal law. However, even if the Court were to consider Costello to have made a federal age discrimination claim, it would fail for the reasons applicable to her gender, race, and national origin discrimination claims, as discussed below.

[4]     *See* Compl. ¶ 55.

environment; (4) Costello's NYCHRL claim is barred for lack of subject matter jurisdiction; (5) Costello cannot show that defendants' allegedly unlawful conduct caused her economic harm and she has failed to mitigate her damages. For the reasons set forth below, defendants' motion for summary judgment is granted in full and this case is dismissed.

## II.   FACTS[5]

---

[5]    Local Civil Rule 56.1(a) requires a party moving for summary judgment to "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Rule 56.1(b) requires the party opposing summary judgment to respond to the movant's statement with a correspondingly numbered statement. "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Rule 56.1(c). If the non-moving party controverts any statement, the non-moving party must cite to evidence that would be admissible at trial to show that the controverted statement is, in fact, in dispute. *See* Rule 56.1(d); *see also Rodriguez v. Schneider*, No. 95 Civ. 4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999). Although Costello's response to Defendants' 56.1 statement contains correspondingly numbered paragraphs, Costello frequently fails to refer to any evidence in the record to support her contention that certain facts are disputed. *See* Plaintiff's 56.1(b) Counterstatement ("Pl. 56.1"). Additionally, many of Costello's response paragraphs either do not specifically dispute Defendants' statements or consist of "conclusory allegations, speculation or conjecture." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). Many of Costello's response paragraphs also contain legal argument more properly included in her Memorandum of Law, though defendants are guilty of the same behavior. *See* Pl. 56.1; Defendants' 56.1 Statement ("Def. 56.1"). Accordingly, I deem Defendants' 56.1 statement to be admitted, except as to paragraphs 11, 31, 35, 37, 46, 50, 51, and 84, which are disputed. Furthermore, Costello submits unsworn statements by former co-workers in support of her

Costello is a fifty-eight-year-old Hispanic woman of Puerto Rican descent.[6] She resides on Long Island.[7] NYSNA is a professional association for registered nurses and a union representing nurses.[8] Defendant Drucker was hired by NYSNA as the Associate Director of Organizing on January 7, 2008.[9] Defendant Calvello was hired by NYSNA in October 2004 as a Nursing Representative, promoted to Associate Director in 2006, and then promoted to Senior Associate Director in December 2008.[10]

### A.    Collective Bargaining Agreement

The terms of Costello's employment were governed in part by the

---

opposition to defendants' motion.  However, as these statements are neither competent nor admissible as evidence, I have disregarded them for the purposes of deciding this motion.  Even had I considered these statements, they fail to place any material issue of fact in dispute.

[6]    *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3; 1/3/11 Deposition of Plaintiff Maria Costello ("Costello Dep.") at 11:11-16, Ex. 1 to Costello Affirmation ("Costello Aff.").

[7]    *See* Def. 56.1 ¶ 40; Pl. 56.1 ¶ 40.

[8]    NYSNA is headquartered in Latham, New York, but maintains offices in New York City.  *See* Def. 56.1 ¶¶ 1, 24; Pl. 56.1 ¶¶ 1, 24; 2/7/11 Declaration of Kim Roberts, NYSNA Director of Human Resources ("Roberts Decl.") ¶ 3.

[9]    *See* Roberts Decl. ¶ 5; 2/7/11 Declaration of Defendant Richard Drucker ("Drucker Decl.") ¶ 1.

[10]    *See* Roberts Decl. ¶ 6; 2/3/11 Declaration of Defendant Susanne Calvello ("Calvello Decl.") ¶ 1.

Collective Bargaining Agreement ("CBA") negotiated between NYSNA and UNITE HERE Local 19.[11]  Although the CBA expired on March 31, 2010, NYSNA voluntarily adopted and complied with identical policies pending renegotiation of the contract.[12]

The CBA provided that staff employees, a category that includes the two positions held by Costello, could be suspended or otherwise disciplined for

---

[11]    *See* Roberts Decl. ¶ 7.

[12]    *See id.* ¶ 27.  Costello maintains in her Rule 56.1 Counterstatement and Affirmation that the terms of her employment were not determined by the CBA as of March 22, 2010.  Her statements in this regard, however, are confusing and contradictory.  In her deposition, Costello stated that the "union left us in . . . May of 2009.  So we were kind of unionless."  Costello Dep. at 18:6-8. Nonetheless, she recognized the CBA in question as "the one [she] had while employed at NYSNA."  Costello Dep. 19:2-6.  In her Affirmation, Costello asserts that "[d]ue to a withdrawal of the union that was representing the collective bargaining unit, employees, including myself, received a notification from NYSNA that *effective March 22, 2010*, the collective bargaining agreement ("CBA") was no longer in effect."  Costello Aff. ¶ 6 (emphasis added).  In her Rule 56.1 Counterstatement, Costello makes a similar contention and refers to "Exhibit 1 – March 24 letter," but no such exhibit is attached.  It would have been useful if Costello had attached any such letter as an exhibit to her Affirmation.  As it stands, the Court is left with a muddled explanation and reference to a non-existent exhibit.  I note again that Costello had the benefit of counsel.  Thus, although the applicability of the CBA is a genuine material fact, it is not in dispute because of Costello's failure to cite to admissible evidence that would contradict defendants' assertion that the CBA, or its equivalent, was in effect during the period in question.

just cause.[13]  The CBA described procedures for implementing discipline and

employee rights in the disciplinary process.[14]  The CBA also provided procedures

by which employees could file grievances.[15]

Under the CBA, field staff assignments and reassignments were to be

based on consideration of the following eight factors: (1) member needs; (2)

number of members; (3) geographic considerations and travel time; (4) current

assignments; (5) employee workloads; (6) network affiliations; (7) type and

number of facilities; and (8) contract expiration dates.[16]  In addition, under the

CBA, the "[l]eadership [would] make every effort to provide advance notice to

those employees affected by the assignments or reassignments to the extent

feasible."[17]

Under the CBA, a "work at home" program was established by which

"bargaining unit members perform work in their home that had previously been

---

[13]     *See* Roberts Decl. ¶ 8; CBA, Ex. A to Roberts Decl., § 4.06.  During
her employment by NYSNA, Costello worked at various times as a Nursing
Representative and as an Organizer.

[14]     *See* CBA § 4.06.

[15]     *See id.* § 13.

[16]     *See* Side Letter Agreement Regarding Staffing Assignments and
Reassignments, Appendix to CBA.

[17]     *Id.*

6

worked in a NYSNA office.  Such Work at Home shall generally be one (1) day per week."[18]  The CBA specified that "[t]he Association and UNITE HERE recognize that all staff must be available to NYSNA management and to the members they serve as needed."[19]  The CBA further stated that "[m]anagement and UNITE HERE recognize that work at home staff are held to the same level of accountability and responsibility as other members of the bargaining unit."[20]

The CBA also addressed leaves of absence for staff employees, stating that "[e]mployees with one or more years of service are eligible for the following leaves of absence: Sick Leave – up to 12 months . . . . Requests for all leaves of absence or extensions of such leaves may be granted at the sole discretion of the Chief Executive Officer, although such requests shall not be unreasonably denied."[21]  The CBA specified that "[i]f the employee [on leave] is unable to return to work within twelve months, his/her employment will be terminated."[22]

## B.   Employment History

Costello began working for NYSNA as a Nursing Representative in

---

[18]   CBA § 4.12.

[19]   *Id.*

[20]   *Id.*

[21]   *Id.* § 9(D).

[22]   *Id.* § 9(C); Roberts Decl. ¶ 11.

7

April 1989.[23]  As such, she serviced NYSNA-unionized facilities by visiting members, attending labor management meetings, and filing grievances and arbitrations on behalf of members.[24]  In 2005, Costello applied for, but did not receive, a promotion to Associate Director.[25]  In 2006, Costello requested and was granted a transfer to the Organizing Department.[26]  As an Organizer, she was responsible for recruiting new members into NYSNA.[27]  Upon his hire in January 2008, Drucker became Costello's direct supervisor.[28]

C.     **Initial Conflict with Drucker**

Drucker and Costello experienced difficulty working together from the start, in part because Costello filed a grievance against Drucker one month after Drucker assumed responsibility as her supervisor.[29]  The conflict arose out of a staff meeting that Drucker scheduled to take place on February 12, 2008, in

---

[23]     *See* Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.

[24]     *See* Costello Dep. at 19:25-20:17.

[25]     *See* Costello Dep. at 43:13-24, 45:13-19.

[26]     *See* Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.

[27]     *See id.*

[28]     *See* Def. 56.1 ¶ 7.

[29]     *See* Costello Dep. at 48:5-53:6; Drucker Decl. ¶¶ 11-13.  The description of this incident is drawn from these two sources.

8

NYSNA's Latham, New York office.  Costello requested Drucker's permission to stay in a hotel at NYSNA's expense on the night prior to the meeting, February 11, 2008, because she would be traveling from her home on Long Island, a drive of approximately four hours under normal conditions.  Drucker denied Costello's request after being informed by his supervisor, Barbara Conklin, that the decision whether to grant an overnight stay was within a manager's discretion.  While driving home after the meeting, Costello left a voicemail message for Drucker in which she expressed her anger that she was still on the road in inclement weather, and asserted that he had caused her to risk her safety by denying her an overnight stay.  Drucker later informed Costello that he considered her voicemail to be inappropriate.

Costello immediately filed a formal grievance (No. 84878) alleging that Drucker's decision not to permit an overnight stay was an "abuse of management" and a violation of NYSNA's "past practices."[30]  At a hearing on the matter, Costello complained that she had been required to drive to the Latham office and was denied permission to expense an overnight stay after the meeting on February 12, although she had previously requested an overnight stay only for

---

[30]     Def. 56.1 ¶ 29; *see also* Pl. 56.1 ¶ 29; Drucker Decl. ¶ 14.

February 11.[31]  The hearing officer denied the grievance, finding that: (1) it was not a violation of the CBA to require Costello to drive to a meeting in Latham because the CBA specifically addressed the possibility that employees would be required to drive for long periods of time; (2) Costello had been encouraged by Drucker to travel with another employee or to take the train if she did not wish to drive; and (3) there was a longstanding practice of holding meetings in Latham without granting overnight stays for the night prior to the meeting.[32]  Although Costello did not allege at the time that the denial of the overnight stay was discriminatory, she now makes that claim based on her allegation that two co-workers, who were similarly situated but outside of her protected class(es), were granted overnight stays on the same occasion.[33]  It is undisputed that those two Organizers – Lisa Ruiz and John O'Connor – had other meetings scheduled in the area immediately before and/or after the staff meeting, suggesting that they were not similarly situated to Costello on that occasion.  However, Costello claims that the other meetings were cancelled due to inclement weather and that Drucker knew as

---

[31]  *See* Def. 56.1 ¶ 2; *see also* Pl. 56.1 ¶ 25.

[32]  *See* Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30.

[33]  *See* Compl. ¶ 21; Pl. 56.1 ¶ 26; Costello Aff. ¶ 8.

much.[34]

### D.    Additional Responsibilities and Further Conflict

When Lillian Graham-Cox, a Nursing Representative, took an unexpected leave of absence in May 2008, Costello temporarily assumed Graham-Cox's responsibilities in addition to her normal workload as an Organizer.[35] Costello was given this assignment, in part, because she was already working as an Organizer at Bronx-Lebanon Hospital, one of the two facilities within Graham-Cox's purview, which gave her greater knowledge of the facility than her colleagues.[36]  Costello alleges that this assignment was an intentional attempt to overload her with work so that she would be deficient in her job, in retaliation for her complaints, both formal and informal.[37]  In response to Costello's protestations that her workload had become too great, the Jewish Home and Hospital, which had been included in Graham-Cox's assignment, was removed from Costello's responsibility.[38]  During this period, Costello was supervised in her Organizer

---

[34]     *See* Pl. 56.1 ¶¶ 33-34.

[35]     *See* Drucker Decl. ¶ 20; Calvello Decl. ¶ 2.

[36]     *See id.*

[37]     *See* Pl. 56.1 ¶ 7.

[38]     *See id.*; Costello Aff. ¶ 11.

capacity by Drucker, and in her Nursing Representative capacity by Calvello.[39]
Costello alleges that under this dual supervision she was overwhelmed with emails
and phone calls from Drucker and Calvello.[40]  Costello also alleges that Calvello
purposely withheld a report that would have assisted her in her new
responsibilities; however, there is simply no admissible evidence of any intentional
withholding.[41]

On May 15, 2008, Costello filed a formal grievance alleging that she
had been assigned to work on an internal organizing campaign in Buffalo, New
York, in retaliation for filing grievance no. 84878.[42]  Defendants maintain that
Costello was assigned to the Buffalo campaign because of her experience and
availability.  However, Costello asserts that other Organizers were equally
qualified and available, and/or lived closer, thereby revealing that explanation to be

---

[39]    *See* Drucker Decl. ¶ 5; Calvello Decl. ¶ 3.

[40]    *See* Costello Dep. at 59:3-7, 69:20-70:21, 86:16-87:7.

[41]    *See* Compl. ¶ 40; Roberts Decl. ¶ 27; Costello Dep. at 87:23-88:8.
*See also* 5/7/08-5/13/08 emails among Calvello, Tom Darby, Barbara Conklin and
Costello, Ex. C to Drucker Decl. (discussing the whereabouts of information and
reports about recent activity at the facilities Costello was taking over from
Graham-Cox).

[42]    *See* Roberts Decl. ¶ 20.  That grievance was eventually withdrawn
after a mediation to resolve seven of Costello's recent grievances.  *See id.*

pretextual.[43]  Costello separately alleges that Drucker commented that he wanted to

see if she could "blend" in Buffalo, which she considered to be a discriminatory

remark, despite not understanding what the comment actually meant.[44]  On May

27, 2008, Drucker and Calvello issued a Final Written Warning to Costello, noting

that her behavior toward them from April 29, 2008 through May 21, 2008, had

been " rude, disrespectful, scathing, and inflammatory," and accusing Costello of

"blatant insubordination."[45]  On August 6, 2008, Costello was issued a separate

Written Warning regarding her "rude and disrespectful treatment of an

administrative assistant."[46]  As part of the latter discipline, Costello was ordered to

---

[43]     *See* Costello Aff. ¶ 9 ("Additionally, as evidence of Drucker's
retaliatory intent, at that time, Donna Chapman was brought down from Buffalo to
work in Long Island, and I was then sent to Buffalo, rather than simply assigning
me to Long Island, which is where I live, and keeping Chapman in Buffalo.");
Costello Dep. at 55:22-56:17 ("At the time I protested because I felt he should
have sent someone with a lot more experience, John O'Connor who was in the
organizing department longer than myself, or Lisa Ruiz, who was also in the
organizing department longer than myself, because I was so busy in the South
Bronx, I had so much to do.  He responded that he already had John assigned
somewhere and he had Lisa assigned somewhere and he was going to send me,
although I was assigned to internal organizing all over the place.").

[44]     *See* Compl. ¶ 25; Costello Dep. at 56:19-57:19.

[45]     5/27/08 Final Written Warning from Drucker to Costello, Ex. B to
Drucker Decl.; Drucker Decl ¶ 22; Calvello Decl. ¶ 4.

[46]     Calvello Decl. ¶ 5. *See also* Drucker Decl. ¶ 23.

attend an anger management class chosen and paid for by NYSNA.[47]

Costello filed grievances on May 16, 2008 and May 30, 2008, alleging that Drucker and Calvello's work assignments and the May 27, 2008 Written Warning were retaliatory.[48]  After a hearing on July 8, 2008, the Hearing Officer determined that the Final Written Warning was warranted. The Hearing Officer stated:

> [t]he evidence illustrates numerous examples of [Costello] exhibiting rude, scathing inflammatory conduct towards supervisors, misrepresenting information to her supervisors, resisting, objecting to or refusing assignments, and airing her discontent with the directives and management of her supervisors in inappropriate ways, all of which amount to insubordination in her relationship with her managers.[49]

Costello's annual performance review, completed on July 30, 2008 by Kim Moore-Ward, an Associate Director at NYSNA, noted in detail her lack of regard for

---

[47]     *See* 8/6/08 Written Warning from Drucker and Calvello to Costello, Ex. D to Drucker Decl.

[48]     *See* Roberts Decl. ¶ 21.  In total, Costello filed twelve formal grievances and several informal grievances against NYSNA during the course of her employment. *See id.* ¶ 18.

[49]     *See* 7/22/08 Letter from Lorraine Seidel, a NYSNA Director and the Hearing Officer at 7/8/08 hearing, to Mike Donovan, Costello's Local 19 UNITE representative, Ex. B to Roberts Decl., at 1-2.

authority.[50]

### E.    Transfer and First FLMA Leave

In August 2008, Costello requested a transfer out of Organizing to a full-time Nursing Representative position because of her constant conflicts with Drucker.[51]  On August 7, 2008, Costello's request was granted.[52]  On August 8, 2008, Costello took a leave of absence for personal health issues, pursuant to the Family Medical Leave Act ("FMLA"), after being hospitalized with chest pain and diagnosed with an anxiety disorder and depression.[53]  On August 12, 2008, while on leave, Costello dual-filed with the New York State Division of Human Rights

---

[50]    The review reads: "Although Maria shows tremendous enthusiasm for representing members and potential members, she also often lacks a regard for authority.  Maria has on several occasions become argumentative with those acting in a supervisory or managerial capacity over her.  This is Maria's greatest deficiency.  This deficiency becomes apparent when she is asked to follow a directive that she may not agree with.  Maria's reactions under these circumstances range from extreme resistance and hostility, to disrespect and borderline insubordination.  She characterizes these episodes as her just being 'honest,' however her behavior during these episodes are [sic] quite troubling, and some of these incidents resulted in discipline being issued.  In the coming year, Maria should work to improve her written correspondence, her computer skills, and most importantly her ability to listen and follow directives."  7/4/08 Performance Appraisal Review by Kim Moore-Ward, NYSNA Associate Director, Ex. D to Roberts Decl.

[51]    *See* Costello Dep. at 107:14-108:2.

[52]    *See id.* at 107:14-108:10.

[53]    *See id.* at 235:11-236:7, 238:20-239:3.

("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), a complaint alleging employment discrimination on the basis of age, gender, race, and national origin.[54] That complaint did not include allegations of retaliation.[55]

Costello returned from the leave of absence on October 1, 2008. Upon her return, Costello resumed work as a Nursing Representative, rather than as an Organizer, in accordance with the transfer that had been effectuated immediately prior to her leave. As a Nursing Representative, she reported to Calvello. After Calvello was promoted, Costello reported to Harriet Cooper, an Associate Director.[56]

On April 29, 2009, NYSNA terminated Cooper's employment, as a result of which Cooper's staff were reassigned to temporary supervisors until Cooper could be replaced with a full-time supervisor.[57] During an emergency meeting held by NYSNA's management team, it was determined that Cooper's staff would be reassigned to individuals who had previously supervised them, to

---

[54]   *See* 8/12/08 NYSDHR/EEOC Complaint filed by Costello, Ex. C to 2/7/11 Declaration of Margaret Watson, defendants' counsel ("Watson Decl.").

[55]   *See id.*

[56]   *See* Calvello Decl. ¶ 6; Costello Dep. at 110:16-111:2.

[57]   *See* Def. 56.1 ¶ 56; Pl. 56.1 ¶ 56.

the extent possible, so as to minimize the disruption to their work.[58]  Among other

pairings, Costello was reassigned to Drucker.[59]  Costello objected vociferously

when she learned of the reassignment, complaining that working under Drucker

would make her sick again, but to no avail.[60]

On June 1, 2009, Drucker issued a Written Warning to Costello

identifying unacceptable deficiencies in Costello's written arbitration summaries.[61]

As part of the discipline, Costello was required to enroll in and complete

educational classes in basic labor law, grievance and arbitration handling,

communication skills, conflict resolution, and basic computer skills.[62]

### F.   Second FMLA Leave and Termination

On June 10, 2009, the day that her annual performance review was

scheduled to take place, Costello took a second leave of absence for personal

health reasons, pursuant to the FMLA and other NYSNA leave policies[63]  Costello

---

[58]    *See* Def. 56.1 ¶¶ 57-58.

[59]    *See id.* ¶ 59; Pl. 56.1 ¶ 59.

[60]    *See* Def. 56.1 ¶ 60; Pl. 56.1 ¶ 60.

[61]    *See* Def. 56.1 ¶ 61; Pl. 56.1 ¶ 61; 6/1/09 Written Warning from
Drucker to Costello ("6/1/09 Warning"), Ex. E to Drucker Decl.

[62]    *See* 6/1/09 Warning.

[63]    *See* Def. 56.1 ¶¶ 62, 63; Pl. 56.1 ¶¶ 62, 63.  In addition to anxiety and
depression, Costello suffered from physical ailments that included back and hip

was out for more than twelve months.  On June 11, 2010, pursuant to the terms of the CBA, and policies voluntarily adopted and complied with following the expiration of the CBA, Costello was terminated due to her failure to return to work following twelve months of leave.[64]

### G.    Additional Allegations

Costello alleges several other instances of disparate treatment and retaliation, and further alleges a hostile work environment.  On one occasion, Drucker ordered her to work at a field site rather than take a work-at-home day as she wished to do.[65]  Costello claims that Drucker did not "micromanage" her co-workers' schedules in the same way, and thus alleges that his conduct toward her

---

injuries.  On June 7, 2010, Costello had a complete hip replacement.  *See* Costello Dep. at 239:7-17, 241:15-242:3.

[64]    *See* Def. 56.1 ¶ 66.  Costello maintains in her Affirmation that the CBA was no longer in effect at the time of her termination and that defendants' argument that she was terminated due to her failure to return to work is thus pretextual.  *See* Costello Aff. ¶ 6.  However, Costello admitted in her deposition that she was aware she could be discharged if she did not return to work after twelve months and she recognized the CBA policy to that effect.  *See* Costello Dep. at 245:25-246:9.  In the context of a summary judgment motion, courts must disregard a party's affidavit that contradicts her prior deposition testimony.  *See Estate of Hamilton v. City of New York*, 627 F.3d 50, 54 (2d Cir. 2010) (quoting *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987)).

[65]    *See* Compl. ¶ 30; Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35; Drucker Decl. ¶ 19.

was discriminatory and/or retaliatory.[66]

Costello states that Drucker scheduled her performance review to take place in Latham, New York, requiring her to travel four hours each way from her home on Long Island.  Costello asserts that such meetings would normally take place in New York City.[67]  Costello further alleges that Drucker "subjected her to false negative disciplines related to job performance," "openly ignored her in meetings," "smirked and laughed at her and her pronunciation of words with a Latino accent," and "criticized her manner of speech."[68]

Costello contends that other similarly situated individuals outside of her protected class were given preferential treatment in work assignments.[69] Costello was assigned to "snakepits," dangerous locations requiring extensive travel, while others were assigned to more comfortable facilities just minutes away from their homes.[70]

_____

[66]     See Costello Aff. ¶ 4 ("After my complaint of discrimination regarding Drucker, I began to be subjected to retaliatory harassment that my similarly situated coworkers who had not complained about discrimination were not subjected, including being micromanaged and inundated with emails.").

[67]     See Costello Dep. at 134:19-135:3.

[68]     Compl. ¶ 26.

[69]     See id. ¶ 27.

[70]     Costello Dep. at 74:16-18; 76:24-77:13.

19

Costello alleges that NYSNA made a concerted effort to eliminate older female African-American and Hispanic employees.[71]  As part of this effort, Costello alleges that Drucker and Calvello "set [her] up to fail" by overloading her with work and providing insufficient support and resources, so that she would be unable to perform her duties adequately.[72]

## H.    Other Organizers

It is undisputed that in early 2008 there were four full-time Organizers.  In addition to Costello, the other Organizers were: Lisa Ruiz, a white 49-year-old female who lived in southern New Jersey and was assigned to the Albany region, the metropolitan New York region, the upper Hudson Valley region, Long Island and central New York State; Valerie Zito, a 59-year-old female who lived in northern New Jersey and was assigned to the upper Hudson Valley region, the metropolitan New York region, and central New Jersey; and John

---

[71]     *See* Compl. ¶ 53 ("Defendant has a history of terminating and/or forcing out senior employees, having terminated the employment of at least five senior employees over the past five years"); Costello Dep. at 119:12-14 ("They wanted to get rid of us old women and Hispanics."); *id.* at 89:8-90:8 ("[A]fter I left they started picking on other people who were more senior, Hispanic and black and over fifty.").

[72]     Costello Dep. at 86:3-88:8.  *See also* Compl. ¶ 33 ("Drucker was attempting to overload Plaintiff in an attempt to cause her to be deficient in her job performance.  Furthermore, none of Plaintiff's similarly situated coworkers outside of her protected class(es) were . . . required to perform such out-of-title work.").

20

O'Connor, a "non-Puerto Rican" 61-year-old male who lived in central New York State and was assigned to the upper Hudson Valley region, the Albany region, and the metropolitan New York region.[73]

During the period between January 1, 2008 and June 10, 2010, NYSNA employed a total of eight full-time Organizers, all of whom reported to Drucker. Of the eight Organizers, six were women. As of June 2010, the average age of the eight employees was 52.[74]

### I.   Procedural History

On August 12, 2008, Costello filed a complaint with the NYSDHR alleging unlawful discriminatory practices relating to her employment based on age, national origin, race, and gender in violation of state law. The same charge was dual-filed with the EEOC.[75] On August 6, 2009, the NYSDHR granted Costello's request for an Administrative Dismissal of her Charge of

---

[73]    *See* Roberts Decl. ¶¶ 12-16; Costello Dep. at 79:19-21 ("Lisa Ruiz is white. Her last name is Spanish because she was married to a Spanish guy."). No information is provided by either party as to Zito's race or national origin.

[74]    *See* Roberts Decl. ¶ 17. The race and national origin of the Organizers, aside from what has been specified above, is not evident from the record.

[75]    *See* Watson Decl. ¶¶ 4, 5.

Discrimination.[76]  On January 21, 2010, the EEOC dismissed Costello's Charge of

Discrimination and issued a "right-to-sue" letter, giving her ninety days to

commence a Title VII action in federal court.[77]  Costello commenced the instant

action on April 16, 2010.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."[78]  "An issue of fact is genuine if

'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'  A fact is material if it 'might affect the outcome of the suit

under the governing law.'"[79]  "[T]he burden of demonstrating that no material fact

exists lies with the moving party . . . ."[80]  "When the burden of proof at trial would

---

[76]   *See* N.Y. Exec. Law § 297(3); Watson Decl. ¶ 6.

[77]   *See* Watson Decl. ¶ 6.

[78]   Fed. R. Civ. P. 56(c).

[79]   *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[80]   *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008).  *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.

fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a

lack of evidence . . . on an essential element of the nonmovant's claim."[81]  In turn,

to defeat a motion for summary judgment, the non-moving party must raise a

genuine issue of material fact.  To do so, the non-moving party must do more than

show that there is "'some metaphysical doubt as to the material facts,'"[82] and

"'may not rely on conclusory allegations or unsubstantiated speculation.'"[83]

However, "'all that is required [from the non-moving party] is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge

to resolve the parties' differing versions of the truth at trial.'"[84]

   "In ruling on a motion for summary judgment, a court must resolve

---

2004).

 [81] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, 500 F. Supp. 2d 356, 361 (S.D.N.Y. 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks and citations omitted).

 [82] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

 [83] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

 [84] *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

all ambiguities and draw all factual inferences in favor of the nonmoving party."[85]

However, "[i]t is a settled rule that '[c]redibility assessments, choices between

conflicting versions of the events, and the weighing of evidence are matters for the

jury, not for the court on a motion for summary judgment.'"[86]   Summary judgment

is therefore "appropriate only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law."[87]

### B.   Summary Judgment and Employment Discrimination

"'[S]ummary judgment is appropriate even in discrimination cases,

for . . . the salutary purposes of summary judgment – avoiding protracted,

expensive and harassing trials – apply no less to discrimination cases than to other

areas of litigation.'"[88]   Indeed, "'[i]t is now beyond cavil that summary judgment

---

[85]      *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson*, 477 U.S. at 242, 255).

[86]      *Id.* (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

[87]      *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).   *Accord Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

[88]      *Lu v. Chase Inv. Serv. Corp.*, No. 10 Civ. 208, 2011 WL 782226, at *1 (2d Cir. Mar. 8, 2011) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on other grounds as stated in *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006)).   *Accord Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

may be appropriate even in the fact-intensive context of discrimination cases.'"[89]

> "Because direct evidence of an employer's discriminatory intent will rarely be found," motions for summary judgment in employment discrimination actions should be evaluated with caution. "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."[90]

"Courts 'must . . . carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.'"[91]

> "[T]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action . . . . To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe

---

[89]    *Feingold v. New* York, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson*, 239 F.3d at 466).

[90]    *Gear v. Department of Educ.*, No. 07 Civ. 11102, 2011 WL 1362093, at * 2 (S.D.N.Y. Mar. 30, 2011) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

[91]    *Fall v. New York State United Teachers*, 289 Fed. App'x 419, 420 (2d Cir. 2008) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)). *Accord Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("'[P]urely conclusory allegations of discrimination, absent any concrete particulars,' are insufficient" to satisfy an employee's burden on a motion for summary judgment.) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

the plaintiff's explanation of intentional discrimination."[92]

## IV.   APPLICABLE LAW

### A.   TITLE VII

#### 1.   Disparate Treatment Discrimination

Title VII proscribes discrimination against or termination of an individual on the basis of "race, color, religion, sex, or national origin."[93] "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting [analysis] laid out by *McDonnell Douglas Corp. v. Green*."[94] "Under this framework a plaintiff must first establish a prima facie case of discrimination."[95] To do so, a plaintiff must show: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination" based on her membership in the protected class.[96]

---

[92]   *Tori v. Marist Coll.*, 344 Fed. App'x 697, 699 (2d Cir. 2009) (quoting *Weinstock*, 224 F.3d at 42) (original emphasis removed).

[93]   42 U.S.C. § 2000e-2.

[94]   *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[95]   *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

[96]   *Id.* at 492.

An adverse employment action is an action by which a plaintiff "has suffered 'a materially adverse change in h[er] employment status' or in the terms and conditions of h[er] employment."[97]  Examples of adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."[98]  "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"[99]  "[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions."[100] "Courts have held that negative evaluations . . . without any accompanying adverse results, are not cognizable."[101]  "[B]eing yelled at, receiving unfair criticism,

---

[97]     *See Kessler*, 461 F.3d at 207 (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir.2004)).

[98]     *Id.* (quotation marks and citation omitted).

[99]     *Kassner v. Second Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2001)).

[100]     *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) (quotation marks and citations omitted).

[101]     *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001). *Accord White v. Fuji Photo Film USA, Inc.*, 434 F. Supp. 2d 144, 152 (S.D.N.Y. 2006).

receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of . . . employment."[102]  Courts require actions that are more significant and permanent.[103]  It is well-established that Title VII "'does not set forth a general civility code for the American workplace.'"[104]

If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.[105]  Finally, if the employer articulates a non-discriminatory reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that the defendant's explanation was pretextual.[106]

## 2.    Hostile Work Environment

---

[102]    *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (quotation marks and citations omitted).

[103]    *See Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002) (holding that there is no cause of action to "vindicate an employee's trivial complaints about an unpleasant working environment"); *Bennett*, 136 F. Supp. 2d at 245 (holding that plaintiff's alleged underutilization did not rise to the level of an actionable adverse employment action).

[104]    *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). *Accord Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).

[105]    *See Ruiz*, 609 F.3d at 492.

[106]    *See id.*

28

An employee seeking to bring a hostile work environment claim must demonstrate the following: (1) she is a member of a protected class; (2) she suffered unwelcome harassment; (3) she was harassed *because of her membership in a protected class*; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.[107]

> In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) that there is a "specific basis for imputing the conduct creating the hostile work environment to the employer."[108]

Evaluating a hostile environment involves reviewing the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[109] The question is whether a reasonable person would have found the environment to

---

[107]   *See Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

[108]   *Duch v. Jakubek,* 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir.2004)).

[109]   *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

be hostile and if the plaintiff perceived it as such.[110]  "[A] plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."[111]

### 3.    Retaliation

"Title VII also makes it unlawful for an employer to discriminate against an employee 'because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter.'"[112]  To establish a prima facie case of retaliation, the plaintiff must show: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."[113]  An adverse employment

---

[110]    *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004).

[111]    *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010).

[112]    *Kaytor*, 609 F.3d at 552 (quoting 42 U.S.C. § 2000e-3(a)).

[113]    *Id.*

30

action in the context of a Title VII retaliation claim is an action sufficiently severe

to dissuade a reasonable worker from making or supporting a discrimination

charge.[114] "Title VII's anti-discrimination and anti-retaliation provisions 'are not

coterminous;' anti-retaliation protection is broader and 'extends beyond

workplace-related or employment-related retaliatory acts and harm.'"[115]

> "Proof of causation can be shown either: (1) indirectly, by
> showing that the protected activity was followed closely by
> discriminatory treatment, or through other circumstantial
> evidence such as disparate treatment of fellow employees
> who engaged in similar conduct; or (2) directly, through
> evidence of retaliatory animus directed against the plaintiff
> by the defendant."[116]

The three-step *McDonnell Douglas* burden-shifting analysis also

applies to retaliation claims.[117] "At the summary judgment stage, if the plaintiff

presents at least a minimal amount of evidence to support the elements of the

claim, the burden of production shifts to the defendant to proffer a legitimate non-

retaliatory reason for the adverse employment action."[118] "If the employer

---

[114]   *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

[115]   *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 67).

[116]   *Id.* at 170 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

[117]   *See Kaytor*, 609 F.3d at 552.

[118]   *Id.* at 552-53.

31

produces such evidence, the employee must, in order to avoid summary judgment,

point to evidence sufficient to permit an inference that the employer's proffered

non-retaliatory reason is pretextual and that retaliation was a 'substantial reason for

the adverse employment action.'"[119]

### 4.    Statute of Limitations and Administrative Exhaustion

> Before an individual may bring a Title VII suit in federal
> court, the claims forming the basis of such a suit must first
> be presented in a complaint to the EEOC or the equivalent
> state agency.   In addition, the claimant must make the
> EEOC filing within 300 days of the alleged discriminatory
> conduct and, before bringing suit, must receive a 'Notice of
> Right to Sue' letter from the EEOC.[120]

However, when a claim alleges a hostile work environment, "the incidents

constituting a hostile work environment are part of one unlawful employment

practice" and "the employer may be liable for all acts that are part of this single

claim."[121]   Accordingly, under the continuing violation doctrine, "[i]n order for the

---

[119]    *Id.* at 553 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

[120]    *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5(e)(1) and *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001)). *Accord Alleyne v. American Airlines, Inc.*, 548 F.3d 219, 219 (2d Cir. 2008) (affirming district court's dismissal of plaintiff's discrimination claim where the alleged discriminatory act occurred more than three hundred days before plaintiff filed a complaint with the EEOC).

[121]    *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."[122]  Furthermore, the statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim."[123]

The continuing violation doctrine does not apply to "discrete discriminatory acts" which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[124]  The Supreme Court distinguishes discrete acts from acts contributing to a hostile work environment on the ground that creation of a hostile work environment "involves repeated conduct" such that "[t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."[125]  Examples of discrete acts that are not covered by the continuing violation doctrine include "termination, failure to promote, denial of transfer, [and] refusal to hire."[126]

---

[122]   *Id.*

[123]   *Id.* at 113.

[124]   *Id.*

[125]   *Id.* at 115.

[126]   *Id.* at 114.

33

"Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."[127] The Second Circuit considers claims reasonably related when

> (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."[128]

## C.   New York State Human Rights Law

The NYSHRL provides, in relevant part, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's age, race . . . national origin . . . [or] sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."[129] "The standards for recovery under New York State's Human Rights Law . . . are in accord with Federal standards

---

[127]   *Williams*, 458 F.3d at 70.

[128]   *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quoting *Butts v. New York Dep't of Hous., Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993), superseded by statute on other grounds as stated in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998)).

[129]   N.Y. Exec. Law § 296(1)(a).

under [T]itle VII of the Civil Rights Act of 1964."[130]  In addition, the Second

Circuit has established that discrimination claims under the NYSHRL and the

NYCHRL are "subject to the burden-shifting analysis applied to discrimination

claims under Title VII."[131]

### D. New York City Human Rights Law

The NYCHRL provides, in relevant part,

> [i]t shall be an unlawful discriminatory practice . . . [f]or an
> employer or an employee or agent thereof, because of the
> actual or perceived age, race . . . national origin, [or] gender
> [ . . . ] of any person, to [ . . . ] discharge from employment
> such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of
> employment.[132]

"City HRL claims have typically been treated as coextensive with

state and federal counterparts. However, the New York City Council has rejected

such equivalence."[133]  By means of the Local Civil Rights Restoration Act of 2005

---

[130]   *McQueen-Starling v. UnitedHealth Group, Inc. and Oxford Health
Plans*, No. 08 Civ. 4885, 2010 WL 768941, at *5 (S.D.N.Y. Mar. 8, 2010) (quoting
*Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 629 (N.Y. 1997) (quotation
marks omitted)).

[131]   *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

[132]   N.Y.C. Code § 8-107(1)(a).

[133]   *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir.
2009).

("Restoration Act"),[134] the City Council "confirm[ed] the legislative intent to

abolish 'parallelism' between the City HRL and federal and state anti-

discrimination law."[135]  The city law must be construed "independently from

similar or identical provisions of New York state or federal statutes."[136]

"Interpretations of New York state or federal statutes with similar wording may be

used to aid in interpretation of New York City Human Rights Law, viewing

similarly worded provisions of federal and state civil rights laws as a floor below

which the City's Human Rights law cannot fall."[137]  "'As a result of [the

Restoration Act], the City HRL now explicitly requires an independent liberal

construction analysis in all circumstances, even where state and federal civil rights

laws have comparable language.'"[138]  In stating a retaliation claim under

NYCHRL, a plaintiff need not establish that an adverse action was materially

adverse.  She need only establish that the action was "reasonably likely to deter a

---

[134]     N.Y.C. Local Law No. 85 (2005).

[135]     *Loeffler*, 582 F.3d at 278.

[136]     Local Law 85, § 1.

[137]     *Id.*

[138]     *Loeffler*, 582 F.3d at 278 (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).

36

person from engaging in a protected activity."[139]

> A nonresident plaintiff may invoke the protection of the City . . . Human Rights Laws only by proving that the discriminatory act or acts took place within [New York City]. In addition . . . . courts interpreting the City Human Rights Law have consistently required that the discriminatory act or acts have had an *impact* in New York City.[140]

## IV. DISCUSSION

### A. The Claims Against Drucker and Calvello in Their Individual Capacities Must Be Dismissed

Costello's Title VII claims against Drucker and Calvello in their individual capacities must be dismissed with prejudice on the ground that Title VII does not provide for individual liability.[141]

### B. The Discrimination Claims Are Barred, in Part, by the Statute of Limitations

Because Costello filed her discrimination charge with the EEOC on August 12, 2008, the three hundred-day statute of limitations bars Costello's

---

[139]   *Williams*, 872 N.Y.S.2d at 34.

[140]   *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 184 (S.D.N.Y. 2007).

[141]   *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009).

recovery for any discriminatory acts occurring before October 17, 2007.[142]

Accordingly, defendants are entitled to summary judgment on Costello's 2005

failure to promote claim.

### C.   The Retaliation Claims Are Barred, in Part, Because Costello Failed to Exhaust Her Administrative Remedies

Costello alleges that Drucker and Calvello disciplined her for

fabricated instances of insubordination,[143] issued negative performance evaluations

containing false allegations,[144] "overloaded her with emails questioning her job

performance,"[145] ignored her requests for assistance,[146] threatened her by "telling

her that she had better 'get with the program,' or else [she] would be out of a

job,"[147] "engaged in conduct designed to result in discipline,"[148] issued a final

---

[142]   *See* 42 U.S.C. § 2000e-5(e)(1).  *Accord, e.g., Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999).

[143]   *See* Compl. ¶¶ 31, 36.

[144]   *See id.* ¶ 37.

[145]   *Id.* ¶ 38.

[146]   *See id.*

[147]   *Id.* ¶ 39.

[148]   *Id.* ¶ 40 ("Specifically, in May 2008, Plaintiff requested a report relating to the status of organization and representation at Bronx Lebanon. Plaintiff needed this information to attend and properly handle a labor/management meeting. Calvello declined to provide Plaintiff the report, indicating that she did not possess the report, despite the fact that a week prior, she had been issued a full

written warning accusing her of insubordination,[149] and called her to "an investigatory meeting, whereat [sic] Defendants were again attempting to falsely charge Plaintiff with discipline."[150]   While Costello labels certain of these allegations as "retaliation," the remainder are not clearly identified as instances of retaliation or discrimination.   To the extent that Costello alleges that these incidents constituted retaliation, such claims must be dismissed because the incidents occurred before the date of Costello's NYSDHR/EEOC complaint wherein Costello failed to allege retaliation.[151]   Similarly, it is evident that because the incidents in question predate the complaint, they cannot have been "reasonably related" to that complaint.[152]   However, to the extent that Costello alleges that the above described incidents constituted discrimination, they are covered by her NYSDHR/EEOC complaint.

Costello additionally alleges that upon being reassigned to Drucker's supervision on April 30, 2009, Drucker "continued his pattern of harassment,

---

report by the prior representative at Bronx-Lebanon, Lilian Cox.").

[149]   *See id.* ¶ 41.

[150]   *Id.* ¶ 42.

[151]   *See* NYSDHR/EEOC Complaint, § 3.

[152]   *Williams*, 458 F.3d at 70.

discrimination, and retaliation."[153]  According to Costello, "Drucker began micro-

managing [my] work, overloading [me] with unreasonable assignments (most of

which were impossible to complete by the due date assigned), and inundating [me]

with emails and questions regarding [my] work performance in an effort to

discipline [me.]"[154]  Because these actions are alleged to have occurred after the

filing of the NYSDHR/EEOC complaint, the Court may consider these allegations

as "reasonably related" to the allegations in that filing, insofar as they constitute

"further incidents of discrimination carried out in precisely the same manner

alleged in the EEOC charge."[155]

D.    **The Disparate Treatment Claim**s

        Costello has satisfied the first two elements of her prima facie case of

discrimination because she is a fifty-eight-year-old Hispanic woman of Puerto

Rican descent, and it is uncontested that she was qualified for the two positions

that she held at NYSNA.  However, she has failed to satisfy the third or fourth

---

[153]     Compl. ¶ 51.

[154]     *Id.*

[155]     *Alfano*, 294 F.3d at 381 (quoting *Butts*, 990 F.2d at 1402-03,
superseded by statute on other grounds as stated in *Hawkins*, 163 F.3d 684.)
Costello alleges that she was micromanaged, overworked, and burdened with
excessive phone calls and emails from Drucker and Calvello, both before and after
her NYSDHR/EEOC filing.

40

elements, because she has failed to show that she suffered an adverse employment action, or anything that could possibly be construed as an adverse employment action, or that any such action took place under circumstances "giving rise to [an] inference of discrimination" based on her membership in a protected class.[156]

### 1.   Costello Did Not Suffer an Adverse Employment Action

The discrete actions that comprise the disparate treatment alleged by Costello and that are properly before this Court include: denial of Costello's request for a hotel overnight stay on February 11, 2008; sending Costello to an assignment in Buffalo and generally giving preferential treatment with respect to work assignments to others outside of her protected class(es); giving negative performance evaluations; "micromanaging" her schedule and denying her a "work-at-home" day; attempting to "overload" her to "cause her to be deficient in her job performance;" failing to provide her with necessary information and/or support, thereby "setting her up to fail" and "engag[ing] in conduct designed to result in discipline;" and "inundating her with emails and questions regarding her work performance."[157]

None of these alleged actions qualify as adverse employment actions.

---

[156]   *Ruiz*, 609 F.3d at 492.

[157]   Compl. ¶ 51.

41

Costello suffered no demotion, material loss of benefits, or significantly diminished material responsibilities.[158]  With the exception of the time-barred 2005 failure to promote, Costello received each transfer that she requested – from Nursing Representative to Organizer and back to Nursing Representative.  Rather than diminished responsibilities, she was given additional responsibilities, in recognition of her knowledge and skills.  While Costello claims that Graham-Cox's responsibilities were transferred to her in an intentional attempt to overwhelm her, she concedes that those responsibilities were reduced upon her demand.[159]  Costello's assignment to the Buffalo campaign may have been inconvenient and undesired, but it was explicitly contemplated in the CBA that Organizers could be assigned as required by NYSNA and its members.

Costello's ultimate termination, which occurred after the filing of the instant Complaint, is the only potentially actionable adverse employment action.  However, Costello never moved to amend her Complaint to include a claim based on her alleged wrongful termination.  Because this claim is raised for the first time in her opposition papers, it will not be considered by the Court.[160]  In any event, it

---

[158]    *See Kessler*, 461 F.3d at 207.

[159]    Pl. 56.1 ¶ 46.

[160]    *See Bonnie & Co. Fashions*, 170 F.R.D. at 119.

42

is evident that Costello's termination was in accordance with the CBA, and did not

occur under circumstances giving rise to an inference of discrimination.[161]

### 2.   Costello Did Not Suffer an Adverse Employment Action Under Circumstances Giving Rise to an Inference of Discrimination

Even if any of the above described incidents could be construed as

adverse employment actions, the circumstances simply do not give rise to an

inference of discrimination.  It is uncontested that of the eight full-time Organizers

who worked under Drucker from 2008 through 2010, six were women.  It is

likewise uncontested that the average age of the eight full-time Organizers at the

time of Costello's termination was fifty-two.[162]  Of the two co-workers who

Costello claims received more favorable treatment in the hotel overnight matter,

John O'Connor is sixty-one years old, thus undermining her claim of age-based

discrimination, and Lisa Ruiz is a woman, thus undermining her claim of gender-

based discrimination.  While neither Ruiz nor O'Connor are apparently Hispanic or

Puerto Rican, there is no evidence in the record suggesting that the reason Costello

was denied an overnight stay was because she is Hispanic and Puerto Rican.  The

discriminatory comments that Costello alleges were made about her accent and

---

[161]    *See* Def. 56.1 ¶¶ 63-66.

[162]    *See* Roberts Decl. ¶ 17.

43

manner of speech are not related temporally or causally to the denial of the overnight stay. In light of the fact that Ruiz is an Hispanic last name and that it has not been established whether Drucker knew that Ruiz was non-Hispanic, Costello's allegations of race and national origin discrimination are rendered even weaker. Furthermore, neither Ruiz nor O'Connor were similarly situated on that occasion, in that both had other meetings scheduled before and/or after the staff meeting, thus justifying the hotel overnights that they were each granted.[163]

Although Costello alleges that other Organizers received preferential assignments, she has provided scant evidence for this assertion. The evidence suggests that all four of the full-time Organizers in 2008 were required to travel some distance from their homes in order to provide the necessary coverage across the state. Costello does not dispute defendants' representations as to those assignments.[164]

The record reflects a number of disciplinary actions taken against Costello. Aside from Costello's vague assertions that those disciplines were based

---

[163]    *See* Drucker Decl. ¶ 16; February 2008 expense reports of John O'Connor and Lisa Ruiz, Ex. A to Drucker Decl. While Ruiz and O'Connor's meetings scheduled for February 13 were ultimately cancelled because of weather conditions, the Court will not second-guess an employer's business decisions on the level of whether hotel reservations should have been cancelled or not.

[164]    *See* Def. 56.1 ¶¶ 40, 41; Pl. 56.1 ¶¶ 40, 41.

on false information, there is no evidence to suggest that they were not warranted. Nor is there evidence in the record to show that Costello was subjected to more disciplinary actions than any of her colleagues, or that she was reprimanded for infractions more minor than others. The only comparative evidence in this regard is Drucker's statement regarding his reprimand of Costello for insubordination: "I do not know of any employee -- other than Costello -- who engaged in similar conduct and I would discipline, in the same manner, any employee who did."[165] There is a distinct lack of evidence in the record to suggest that the disciplinary actions taken against Costello were motivated by discriminatory animus.

It is possible, though not established, that Costello was treated differently in some respects from other employees. However, Costello has provided no evidence that such disparate treatment, to the extent that it existed, was due to her membership in one or another protected class, rather than based on her own difficult personality. In fact, the record shows a history of conflict with supervisors going back the better part of a decade.[166]

---

[165]   Drucker Decl. ¶ 22.

[166]   Despite Costello's contention that she had always received positive performance reviews and never experienced any difficulty before Drucker's arrival, she offers no evidence to support this contention. To the contrary, the record shows that for several years Costello's annual performance reviews, including her self-evaluations, consistently mentioned her tendency to respond impulsively and her need to improve her writing and computer skills. *See* 2001-

### E.   Hostile Work Environment Claim

It is not entirely clear where Costello's disparate treatment claim ends and her hostile work environment begins, but the hostile work environment claim appears to be based, in part, on a series of alleged incidents in which Drucker "(a) subjected Costello to false negative disciplines relating to her job performance; (b) openly ignored Costello in meetings; (c) smirked and laughed at [Costello] and her pronunciation of words with a Latino accent; and, (d) criticized [Costello's] manner of speech."[167]   Costello additionally alleges, "[o]n at least one occasion, [Costello's] style of speech and pronunciation, which is derived from her Latino heritage, were ridiculed by Senior Director Barbara Conklin."[168]   However, Costello's description of her harassment consisted primarily of being inundated with emails and micromanaged by her supervisors.[169]

---

2007 Performance Appraisal Reviews of Costello, Ex. A to Defendants' Rule 26 Disclosure. Although these evaluations were not included either by defendants in their summary judgment motion, or by plaintiff in her opposition, they were filed with the Court as part of defendants' Rule 26 Disclosure. While Rule 26 disclosures are not normally filed with the Court, in this case they were, and thus they form part of the record. The Court may therefore consider the evaluations in deciding this motion, in accordance with Federal Rule of Civil Procedure 56(c)(3).

[167]   Compl. ¶ 26.

[168]   *Id.* ¶ 28.

[169]   *See* Costello Aff. ¶ 4; *see also* Costello Dep. at 86:3-88:19 ("He was just constantly on me, on me . . . about everything, constantly, constantly. Him and

Costello has failed to demonstrate that most of the alleged harassment had anything to do with her membership in protected classes. And while mocking a person's accent and pronunciation could be construed as harassment based on race and national origin, and is clearly offensive, Costello has not alleged that such conduct was either pervasive or continuous. Thus, while Costello clearly meets the first element of a prima facie case of hostile work environment, and arguably meets the second, her allegations all fail as to either the third or the fourth elements. The harassment that she describes as being based on her race or national origin was not sufficiently pervasive or continuous as to alter the conditions of her employment, and the harassment that she describes as being continuous does not appear to have been based on her membership in one or more protected classes. While Drucker and Calvello's management style may have been overzealous, overbearing, or even oppressive, the evidence does not suggest that their behavior toward Costello arose out of any discriminatory animus. Having an overbearing boss is simply not enough to render an environment hostile under Title VII.

Furthermore, while Costello clearly found the environment to be subjectively hostile, to the extent that she took two medical leaves at least, in part,

---

Susanne Calvello were constantly E-mailing me. In 2008 . . . I was completely inundated with chronic calls from Richard Drucker over ridiculous questions . . . I was completely inundated with assignments that were altered, reports that were not given to me appropriately so that I could do my assignment correctly ."").

47

because of the depression and anxiety that she suffered from what she perceived as constant harassment, it is far from clear whether a reasonable person would have found the same.[170]  Additionally, Costello undermines her claims that she was being individually targeted insofar as she has stated that the entire team felt that it was being micromanaged by its supervisors, even before Drucker's arrival.[171]  For all these reasons, Costello's claim of hostile work environment fail.

### F.    Retaliation Claim

It is undisputed that Costello engaged in a protected activity by filing a complaint of discrimination with the NYSDHR/EEOC, as well as by filing grievances in accordance with the CBA, thereby satisfying the first two elements of a retaliation claim – the employee engaged in a protected activity and the employer knew of that protected activity.[172]  The next question is whether Costello

---

[170]    *See Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir. 1999).

[171]    *See* Costello Dep. at 174:3-15, 175:6-9 ("Two of the . . . male RN organizers complained they were being micromanaged and being treated badly by Barbara Conklin.  Everybody was complaining and everybody was miserable . . . . [The Organizers] felt they were being micromanaged); *see also* 5/11/09 Letter from Local 19 Committee to Tina Gerardi, NYSNA CEO, Ex. 9 to Costello Aff. ("The Local 19 membership is well aware of the new micromanagement by Blueberry [sic] style that seems to have taken the place of direct meetings and interactions.").

[172]    *See* Def. 56.1 ¶¶ 78-80; Pl. 56.1 ¶¶ 78-80.

was subjected to a materially adverse employment action. As discussed above, the pattern of abuse that Costello describes does not constitute, in whole or in part, materially adverse employment actions. Accordingly, I need not address whether there was a causal connection between the protected activity and any adverse employment action.[173]

### G.    NYSHRL Claims

As the NYSHRL analysis parallels the Title VII analysis, Costello's attempt to sustain a prima facie case of discrimination, hostile work environment, and retaliation also fail under the NYSHRL.

### H.    NYCHRL Claims

In their respective submissions, the parties have addressed the question of whether the alleged discrimination had enough of an impact within New York City to qualify Costello for protection under the NYCHRL, as she is a non-resident.[174] However, they have not addressed the question of what standards to apply in evaluating the substance of Costello's NYCHRL claims. This Court thus declines to exercise supplemental jurisdiction over the NYCHRL claims, as

---

[173]    *See Kaytor*, 609 F.3d at 552.

[174]    *See, e.g., Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285 (2010)*; Pearce*, 528 F. Supp. 2d at 184-86.

49

"this area of law would benefit from further development in the state courts."[175]
The NYCHRL claims are dismissed without prejudice to refiling in state court.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.  The Clerk is directed to close this motion [Docket No. 14 ] and this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:        New York, New York
              April 22, 2011

---

[175]    *Spiegel*, 604 F.3d at 83.  *Accord Kolenovic v. ABM Indus. Inc.*, 361 Fed. App'x 246 (2d Cir. 2010); *Dent v. United States Tennis Ass'n*, No. 08 CV 1533, 2011 WL 308417, at *9 (E.D.N.Y. Jan. 27, 2011).

- **Appearances** -

**For Plaintiff:**

Thomas Anthony Ricotta, Esq.
Leeds Morelli & Brown, PC
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

**For Defendants:**

Margaret Laukin Watson, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
(212) 483-9490

Richard Scott Mills, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Wall Street Plaza
88 Pine Street, 24th Floor
New York, New York 10005
(212) 483-9490